UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

────────────────────────────────

JARELL MONTEZ WALKER,

                    Petitioner,

          v.                                          9:25-CV-0665
                                                      (DNH)
WARDEN, FCI Ray Brook,

                    Respondent.

────────────────────────────────

APPEARANCES:                          OF COUNSEL:

JARELL MONTEZ WALKER
Petitioner pro se
24157-055
Hazelton Federal Correctional Institution
P.O. BOX 2000
Bruceton Mills, WV 26525

UNITED STATES ATTORNEY                FORREST T. YOUNG, ESQ.
FORREST T. YOUNG, ESQ.
Assistant United States Attorney
100 S. Clinton Street – Suite 900
Syracuse, New York 13261


DAVID N. HURD
Senior United States District Judge

**DECISION and ORDER**

## I.    INTRODUCTION

Pro se petitioner Jarell Montez Walker seeks federal habeas corpus relief pursuant to

28 U.S.C. § 2241.  Dkt. No. 1, Petition ("Pet.").  Respondent has opposed the Petition.  Dkt.

No. 8, Memorandum of Law in Opposition ("Resp. Memo."); Dkt. No. 8-1, Declaration of

Yancy Matteau ("Matteau Decl."); Dkt. Nos. 8-2–8-8, Exhibits in Support of Matteau Decl.

Petitioner then filed a reply.  Dkt. No. 11, Traverse.[1]

For the reasons outlined below, the Petition is denied and dismissed.

## II.    RELEVANT BACKGROUND

### A.    Petitioner's Conviction and Sentence

On September 15, 2016, the United States District Court for the Middle District of North Carolina sentenced petitioner to a 204-month term of imprisonment, followed by five years of supervised release, based on his conviction for Possession of a Firearm by a Convicted Felon.  *See* Matteau Decl. ¶ 5; *see also United States v. Walker et al.*, No. 1:15-CR-0323 (M.D.N.C.) ("*Walker I*"), Dkt. No. 56, Plea Agreement; *Walker I*, Dkt. No. 90, Judgment; *Walker I*, Dkt. No. 113, Opinion (affirming the district court's judgment).

As of the filing date of the Response, Petitioner's projected release date, via good conduct time, was November 18, 2030.  Matteau Decl. ¶ 7.  Petitioner's offense is not one of the enumerated disqualifying convictions listed in the First Step Act ("FSA"), at 18 U.S.C. § 3632(d)(4)(D), and he is therefore eligible to earn FSA time credits.  Matteau Decl. ¶ 6.

### B.    FSA Time Credits

The FSA allows an eligible prisoner determined to be a medium or high risk of recidivism to earn 10 credits for every 30 days of successful programming, and an eligible prisoner determined to be a minimum or low risk of recidivism to earn 15 credits for every 30 days of successful programming.  18 U.S.C. § 3632(d)(4)(A).  The Bureau of Prisons ("BOP") utilizes the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") to

---

[1] After the Petition was filed, petitioner was transferred from the Federal Correctional Institution ("FCI") in Ray Brook, New York to the United States Penitentiary ("USP") in Big Sandy, Kentucky.  Dkt. No. 7. Several months after the Traverse was filed, petitioner notified the Court of his transfer from USP Big Sandy to FCI Hazelton. Dkt. No. 12.

"determine the recidivism risk of each inmate and classify him/her as having a minimum, low, medium, or high risk of recidivism." *See* Matteau Decl. ¶¶ 10-12.[2]

The BOP may apply FSA earned time credits toward pre-release custody or early transfer to supervised release for prisoners who have "shown through periodic risk assessments a demonstrated recidivism risk reduction or ha[ve] maintained a minimum or low recidivism risk." 18 U.S.C. § 3624(g). A prisoner seeking to have time credits applied toward early transfer to supervised release must have been determined to "be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner." 18 U.S.C. § 3624(g)(1)(d)(ii).

A prisoner seeking to have FSA time credits applied toward prerelease custody must "be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner," or be approved for such a transfer by the Warden. 18 U.S.C. § 3624(g)(1)(d)(i). Upon receipt of a petition to be transferred to prerelease custody or supervised release, a Warden may apply FSA time credits and transfer an eligible prisoner to prerelease custody if, among other things, the Warden determines that the prisoner "has made a good faith effort to lower [his] recidivism risk through participation in recidivism reduction programs or productive activities[.]" 18 U.S.C. § 3624(g)(1)(D)(i)(II)(bb).

BOP Program Statement 5410.01, CN-2 provides that this "good faith effort" is demonstrated by, among other things, the prisoner "maintaining clear conduct for at least three years from the date of the request" and "[s]uccessfully completing at least one of the [BOP's] residential [evidence-based recidivism reduction] programs" if commensurate with an

---

[2] The tool takes into account fifteen factors, such as age, prior sex offense convictions, prior violent offenses, criminal history, history of violence, time since last incident report, and work programs. *Id.*, ¶ 12.

3

identified need.  Matteau Decl. ¶ 21; Dkt. No. 8-6 at 19.  The Program Statement also sets forth the procedure by which a prisoner may demonstrate this good faith effort and seek the Warden's approval to apply credits to transfer them to pre-release custody—namely, by submitting a Form BP-A0148 to staff during a regularly scheduled Program Review.  *Id*., Dkt. No. 8-6 at 20.

### III.    THE PETITION AND RESPONSE

Petitioner challenges the calculation by the BOP of his prison sentence and seeks an order directing the BOP to apply his alleged FSA time credits to reduce his term of confinement.  *See* Pet. at 2-8.  Respondent contends that the Petition should be dismissed because Petitioner failed to properly exhaust his administrative remedies regarding his claim before filing this suit, and, alternatively, the claim lacks merit because Petitioner has never been deemed a minimum or low risk for recidivism and has not invoked the established process to seek the Warden's approval to apply his FSA credits to pre-release custody.  *See* Resp. Memo. at 3-9.

### IV.    DISCUSSION

#### A.     Jurisdiction

Habeas corpus relief is available if a prisoner is "in custody in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(c)(3).  A petition is properly brought pursuant to 28 U.S.C. § 2241 where a federal prisoner challenges the execution of his or her sentence, rather than its imposition.  *See Adams v. United States*, 372 F.3d 132, 134-35 (2d Cir. 2004); *Jiminian v. Nash*, 245 F.3d 144, 146-47 (2d Cir. 2001).  Because execution of a sentence includes, among other things, the computation of the sentence, a § 2241 petition is the proper means to challenge sentence computation.  *Adams*, 372 F.3d at 135 (citing *Nash*, 245 F.3d at 146); *see also Cook v. N.Y.S. Div. of Parole*, 321

4

F.3d 274, 278 (2d Cir. 2003) (explaining that a petitioner can use 2241 to challenge a federal official's computation of a sentence, parole decisions, or prison disciplinary actions); *see also, e.g., Lugo v. Hudson*, No. 9:13-CV-0753 (GTS), 2014 WL 11350815, at *4 (N.D.N.Y. June 16, 2014) (explaining the petitioner's challenge to "the BOP's calculation of his federal sentence," was "properly brought pursuant to section 2241."), *aff'd*, 785 F.3d 852 (2d Cir. 2015); *Holton v. Fed. Bureau of Prisons*, No. 6:22-CV-6528 , 2023 WL 2965145, at *2 (W.D.N.Y. Apr. 17, 2023) (habeas petitioner pursuant to 28 U.S.C. § 2241was "the appropriate vehicle" for the petitioner's claim he was entitled to FSA time credit).

Petitions filed under section 2241 must name the petitioner's warden as respondent and be filed in the district of the petitioner's confinement.  *See* 28 U.S.C. § 2241(a); *Rumsfeld v. Padilla*, 542 U.S. 426, 435, 447 (2004).  When a petitioner files a petition under Section 2241 challenging the BOP's sentence calculations and application of FSA credits and is thereafter transferred to a facility outside of the filing district, the district court in which the action was originally filed may retain jurisdiction over the proceeding.  *See, e.g., Rivera-Perez v. Stover*, 757 F. Supp. 3d 204, 211 (D. Conn. 2024) (stating that the "application of FSA time credits" is a "type of relief [that] can be effectuated by the BOP generally, not any one warden specifically"); *Mason v. Alatary*, No. 23-CV-0193, 2023 WL 2965619, at *1-3 (N.D.N.Y. Apr. 17, 2023) (denying request to transfer venue and noting that "courts have found that the presence of a BOP facility within the jurisdiction, even after a petitioner was transferred to a different judicial district, was sufficient to keep the respondent 'within reach' and allow the original district court to maintain jurisdiction").

Here, Petitioner was incarcerated at Ray Brook, in the Northern District of New York, when he filed this action.  Although Petitioner was subsequently transferred to a facility

outside of this District, Respondent does not challenge the Court's jurisdiction.  *See* Resp. MOL. at 1-2 n.1.

Accordingly, a § 2241 petition was both the appropriate procedural vehicle to address Petitioner's challenge to the execution of his sentence, *Adams*, 372 F.3d at 135, and commenced in the proper court, 28 U.S.C. § 2241(a); *Rumsfeld*, 542 U.S. at 447.

### B.    Exhaustion

### 1.  Relevant Legal Standard

Federal inmates seeking habeas relief pursuant to 28 U.S.C. § 2241 must exhaust their administrative remedies prior to filing a petition.  *See Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001).  "This requires compliance with the BOP's four-step Administrative Remedy Program."  *Lallave v. Martinez*, 609 F. Supp. 3d 164, 179 (E.D.N.Y. 2022) (citing 28 C.F.R. § 542.10(a)).

The exhaustion process is aptly summarized as follows:

> Available to all federal prison inmates is an internal, four-step administrative grievance procedure adopted by the BOP for the stated purpose of "allow[ing] an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." . . . The first step of the prescribed process entails making an effort to obtain an early resolution of the matter by raising the issue informally to staff. . . . In the event this avenue does not lead to a successful resolution, the inmate next may submit a formal written [Administrative Remedy ("AR")] to the warden of the particular facility involved, utilizing a designated BP–9 form, within twenty days of the relevant event. . . . If the AR is denied, an appeal may be taken to the appropriate BOP Regional Director within twenty calendar days of the date of denial. . . . As a fourth and final step, an unfavorable decision from the Regional Director may be appealed to the General Counsel's office (also referred to as the "Central Office" [or "CORC"]) within thirty days of the date on which the Regional Director rejects the inmate's appeal.

*Barber v. Perdue*, No. 9:11-CV-0127 (NAM/DEP), 2012 WL 5996342, at *4 (N.D.N.Y. Nov. 9, 2012) (citing cases and 28 C.F.R. §§ 542.10(a), 542.13(a), 542.14(a), & 542.15(a)) (internal citations omitted)).  In sum, "[n]o administrative appeal is fully exhausted until the BOP's Central Office reviews it."  *Reynolds v. Warden of FCI Ray Brook*, No. 9:16-CV-1264 (TJM/TWD), 2019 WL 8064012, at *3 (N.D.N.Y. Aug. 5, 2019).

"The exhaustion requirement protects the authority of administrative agencies, limits interference in agency affairs, develops the factual record to make judicial review more efficient, and resolves issues to render judicial review unnecessary."  *Rosenthal v. Killian*, 667 F. Supp. 2d 364, 366 (S.D.N.Y. 2009) (cleaned up).  "Failure to exhaust administrative remedies results in a procedural default, which bars judicial review unless the petitioner persuades the Court that the failure to exhaust should be excused."  *Id*.; *see also Zucker v. Menifee*, No. 03-CV-10077, 2004 WL 102779, at *4 (S.D.N.Y. Jan. 21, 2004) ("[T]he exhaustion requirement for § 2241 petitions is prudential, not statutory, unlike habeas corpus petitions filed pursuant to 28 U.S.C. § 2254. Therefore, [Petitioner's] failure to exhaust may be excused at the court's discretion.") (cleaned up).

In situations in which "an exhaustion requirement is judicially imposed instead of statutorily imposed," exhaustion of administrative remedies may be excused "when '(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question.'"  *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) (quoting *Able v. United States*, 88 F.3d 1280, 1288 (2d Cir. 1996)) (additional citations omitted); *see also Lopez v. Terrell*, 697 F. Supp. 2d 549, 556 (S.D.N.Y. 2010) ("The exhaustion requirement for § 2241 petitions, however, is

prudential, not statutory, and may be excused at the court's discretion."), *rev'd on other grounds*, 654 F.3d 176 (2d Cir. 2011).

### 2. Analysis

Respondent has adduced record evidence showing that Petitioner did not exhaust his administrative remedies before commencing this action. *See* Matteau Decl. ¶¶ 29-31; Dkt. No. 8-8. Indeed, BOP records show that Petitioner never even submitted a BP-9 form related to the issue of FSA credits, which would have been only the second step in the exhaustion process. *Id*.

Petitioner acknowledges that he failed to exhaust his administrative remedies before commencing this action. *See* Pet. at 7; Traverse at 1-2, 4-5. However, Petitioner contends, in his Petition, that he was not required to exhaust his administrative remedies before commencing this action because his "conditional date has already passed [and] therefore exhaustion is futile." Pet. at 7.

Petitioner somewhat shifts his reasoning for non-exhaustion in his Traverse, arguing that the relevant factors courts consider when deciding whether or not to excuse exhaustion all favor waiver of the requirement. *See* Traverse at 4. More specifically, Petitioner contends that "[t]he BOP has consistently maintained a categorical policy of denying application of FSA credits to prisoners it labels 'high risk,' regardless of individual circumstances" such that requiring exhaustion would be futile and result in a delay of judicial review that "would cause [irreparable harm.]" *Id*. at 4-5. Petitioner further contends that "[o]nly a federal court can compel the BOP to correctly apply FSA credits as Congress intended." *Id*.

As an initial matter, Petitioner argues that he was entitled to release to home confinement or a halfway house by November 2, 2025, based on his belief that he had

8

earned, as of the filing date of the Petition, 4,296 days of time credits redeemable for 1,968 days off his 204-month prison sentence.  Pet. at 2.  Petitioner further contends that (1) the "full benefits" of the FSA apply to him, (2) he initially earned FSA credits at a rate of 10 days per month, but that number "should have then changed to 'low recidivism' and 15 days per month over two years ago according to the codified PATTERN tool[,]" and (3) his recidivism level is "incorrect" in SENTRY.[3]  *Id*. at 3, 5-7.  In other words, Petitioner is challenging the BOP's policies as applied to him to determine his PATTERN Score, custody level score, and institution placement.[4]

Respondent disputes Petitioner's FSA credit calculation, noting that BOP records show that Petitioner's projected release date is November 18, 2030, and he has only earned 750 FSA time credits.  Matteau Decl. ¶¶ 13-14, 18; Dkt. No. 8-5.  Respondent also contends that Petitioner is not eligible to have these credits applied toward early transfer to supervised release because he has "never been deemed a minimum or low risk of recidivism" and there is no record of Petitioner requesting an exercise of discretion from the Warden at FCI Ray Brook.  *Id*., ¶¶ 13, 15-16, 20.

As an initial matter, the BOP can recalculate Petitioner's FSA credits based on any legitimate error identified by Petitioner and/or update his entitlement to these credits based on any "incorrect" recidivism level entry or exercise of discretion from the appropriate Warden.  Therefore, it cannot be said that available administrative remedies provided Petitioner with no genuine opportunity for adequate relief, or that it would have been futile for

---

[3] SENTRY is the BOP's computerized data base that maintains records of federal prisoners.  *See* Matteau Decl. ¶ 3.

[4] Although Petitioner argues that his recidivism classification should have been changed to "low" "over two years ago[,]" he does not clearly identify the reason he believes this change was required at that time, let alone indicate how or when he attempted to address this discrepancy with appropriate officials.

him to pursue exhaustion. *Schulz v. Warden*, No. 9:23-CV-0295 (AJB/TWD), 2025 WL 4070712, at *2-4 (N.D.N.Y. Dec. 31, 2025) (noting that "the calculation of [petitioner's] recidivism risk score is solely within the discretion of the BOP" and citing, *inter alia*, *Asbury v. Kelly*, No. 25-HC-2020, 2025 WL 3211220, at *2 (E.D.N.C. Nov. 17, 2025) (explaining that "calculating [the petitioner]'s recidivism risk score is solely within the discretion of the BOP")), *report and recommendation adopted by* 2026 WL 173999 (N.D.N.Y. Jan. 22, 2026); *Rosales v. Petrucci*, No. 20-CV-2136, 2021 WL 5449701, at *5 (S.D.N.Y. Nov. 22, 2021) ("To the extent Petitioner's challenge is unique to his specific background and circumstances, it would not be futile for Petitioner to raise the alleged mistakes that resulted in an incorrect PATTERN score and security classification through the ARP. This type of challenge falls squarely within the sorts of issues to be raised with the BOP."); *Simon v. Bergami*, No. 21-CV-489, 2021 WL 3856256, at *3 (D.N.J. Aug. 30, 2021) (petitioner must exhaust administrative remedies when challenging the calculation of his PATTERN score and entitlement to credits under the FSA); *United States v. Nwankwo*, No. 12-CR-31, 2019 WL 4743823, at *2 (S.D.N.Y. Sept. 17, 2019) (inmate requesting clarification on eligibility for time credits contemplated by FSA "must then exhaust his administrative remedies before the BOP prior to moving the Court for a reduction of his sentence"); *Guzman-Mogrovejo v. United States*, No. 10-CV-4123, 2010 WL 3747885, at *1 (E.D.N.Y. Sept. 17, 2010) ("Petitioner may not challenge the BOP's computation of his sentence in this Court before exhausting administrative remedies."); *see also Rosenthal v. Killian*, 667 F. Supp. 2d 364, 367 (S.D.N.Y. 2009) ("[E]ven if it is likely that [Petitioner's] administrative appeals would have been denied, such a showing would not prove futility."); *Beharry*, 329 F.3d at 62 ("That [petitioner's] argument would likely have failed is not tantamount to stating that it would have been futile to raise it; and indeed, many of the

purposes for requiring exhaustion would have been served had [petitioner] raised his claim below.").

In addition, if the BOP's FSA credit calculation is accurate, Petitioner remains more than two years away from the earliest date that he could be awarded prerelease custody, setting aside the issue of his entitlement to these credits based on his determined recidivism level. Thus, the Court has no basis to conclude that irreparable injury may occur without immediate judicial relief.

Finally, this is not a case in which Petitioner has credibly raised a substantial constitutional question that would warrant excusing the exhaustion process.

In light of the foregoing, the Court finds that Petitioner was not excused from pursuing relief through administrative procedures before commencing this action, and that the Petition must therefore be dismissed for non-exhaustion. Notwithstanding this ruling, the Court will also address the merits of the Petition for the sake of completion.

### C.      Merits

A petitioner in a habeas proceeding under 28 U.S.C. § 2241 "bears the burden of proving that he is being held contrary to law; and ... must satisfy his burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) (citing *Parke v. Raley*, 506 U.S. 20, 31 (1992)) (additional citation omitted). In this case, setting aside the issue of exhaustion, Petitioner has failed to meet this burden.

The FSA created parameters for a "risk and needs assessment system" to classify, identify, and provide evidence-based recidivism reduction programs or productive activities for incarcerated individuals. 18 U.S.C. § 3632(a). Under the FSA, eligible inmates may earn specified time credits per month, if they "successfully participate in recidivism reduction

programs or productive activities," and such time credits "shall be applied toward time in prerelease custody or supervised release." *Id*. § 3632(d)(4)(C).

A prisoner is eligible to be placed in "supervised release" if he "has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner." 18 U.S.C. § 3624(g)(1)(D)(ii). A prisoner may alternatively be placed in "prerelease custody" if he has either "been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner;" or "had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison," after the warden has determined:

> (aa) the prisoner would not be a danger to society if transferred to prerelease custody or supervised release;
>
> (bb) the prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and
>
> (cc) the prisoner is unlikely to recidivate[.]

*Id*. § 3624(g)(1)(D)(i). As set forth above, the process for a prisoner to petition the warden to be transferred is set forth in BOP Program Statement 5410.01 CN-2, which states as follows: "[i]nmates may initiate a request ... by submitting a BP-A0148, Inmate Request to Staff, during their regularly scheduled Program Review. The Unit Manager will submit a request, along with the unit team's recommendation, to the Warden (or designee) for final decision." Dkt. No. 8-6 at 20; Matteau Decl. ¶ 19; *see also, e.g.*, *Chandler v. United States*, No. 25-1248, 2025 WL 3270524, at *5 (M.D. Pa. Nov. 24, 2025).

At Petitioner's most recent risk assessment at the time the Petition was filed, he was assessed as a "high" risk of recidivism. Matteau Decl. ¶ 13; Dkt. No. 8-4. Since Petitioner "has not been deemed a 'minimum' or 'low' risk to recidivate, . . . he is not eligible for

12

application of time credits under 18 U.S.C. § 3624(g)(1)(D)(i)(I) to be placed in prerelease custody or 18 U.S.C. § 3624(g)(1)(D)(ii) to be placed in supervised release."  *Schulz v. Warden*, No. 9:23-CV-0295 (AJB/TWD), 2025 WL 4070712, at *2-4 (N.D.N.Y. Dec. 31, 2025) (collecting cases), *report and recommendation adopted by* 2026 WL 173999 (N.D.N.Y. Jan. 22, 2026).

As Respondent acknowledges, "most of Petitioner's PATTERN score points are attributed to his criminal history, which is a static factor."  Matteau Decl. ¶ 13 n.6.  Petitioner appears to argue the weight of this static factor runs contrary to Congress' intent, asserting that "[b]y treating high-risk status as an automatic bar, the BOP has effectively written an exclusion into the statute that Congress never enacted."  Traverse at 6.

However, as recently noted by the Honorable Therese Wiley Dancks, "the fact that [P]etitioner has not committed one of the 'certain crimes . . . that exempt the prisoner from earning Time Credits,' under 18 U.S.C. § 3632(d)(4)(D), does not preclude him from being assessed at a 'medium' or 'high' recidivism risk score such that his time credits could not be applied."  *Schulz*, 2025 WL 4070712, at *4 (citing *Brown v. Garrett*, No. 7:22-CV-00551 (AMM/JHE), 2022 WL 18161601, at *3 (N.D. Ala. Dec. 22, 2022) (rejecting the petitioner's argument that "she 'will never be a [l]ow or [m]inimum risk due to [her] past criminal history'" and explaining, "[w]hile [the petitioner] is free to earn time credits as an inmate with a medium risk recidivism level, under 18 U.S.C. § 3624(g)(1)(D)(i)-(ii), the BOP cannot apply those time credits to her sentence unless and until she has a minimum or low risk recidivism level for two consecutive assessments for prerelease custody or a minimum or low risk recidivism level for the last assessment for supervised release."), *report and recommendation adopted*, 2023 WL 130519 (N.D. Ala. Jan. 9, 2023)).

13

Moreover, insofar as Petitioner asks this Court to modify his recidivism risk score based on his age, programming, and conduct since his incarceration, "the Court may not do so as the calculation of his recidivism risk score is solely within the discretion of the BOP." *Schulz*, 2025 WL 4070712, at *4 (collecting cases).

Finally, as Respondent asserts, *see* Resp. Memo. at 8-9; Matteau Decl. ¶¶ 20-22, and Petitioner does not contest, *see* Traverse at 7-9, Petitioner has not submitted a BP-A0148 form request to petition the Warden for transfer.  Therefore, while Petitioner is correct that a "high risk" PATTERN score does not preclude transfer to prerelease custody or supervised release under 18 U.S.C. § 3624(g)(1)(D)(i)(II), "because he has not made the requisite request to the warden in the manner set forth in the relevant BOP Program Statement, he is not entitled to habeas relief on this basis."  *Schulz*, 2025 WL 4070712, at *4 (citing *Bridges v. Rickard*, No. 3:25-CV-1201, 2025 WL 2375271, at *2 (M.D. Pa. Aug. 14, 2025) (explaining, "an inmate with a high or medium PATTERN score can petition the warden to be considered on an individualized basis for placement in prerelease custody or supervised release" and denying habeas relief where there was "nothing in the record indicating that [the petitioner had] made such a request to the warden.") (citing 18 U.S.C. § 3624(g)(1)(D)(i)(II))).

In short, Petitioner has failed to demonstrate that he is entitled to an application of FSA time credits and reduction of his sentence.  Accordingly, irrespective of whether Petitioner's failure to exhaust his administrative remedies should be excused, the instant Petition is meritless and is therefore denied and dismissed.

## V.    CONCLUSION

**WHEREFORE**, it is

**ORDERED** that the Petition, Dkt. No. 1, is **DISMISSED AND DENIED**; and it is further

**ORDERED** that the Court declines to issue a Certificate of Appealability.  28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))).  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* Fed. R. App. P. 22(b); 2d Cir. R. 22.1.

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated:  May 15, 2026
       Utica, New York.

David N. Hurd
U.S. District Judge

15